```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
JULISSA CRESPO, as Parent and Natural                             :
Guardian of B.T., and JULISSA CRESPO,                             :
Individually; PAVLO POPOVYCHENKO, as                              :
Parent and Natural Guardian of V.P., and PAVLO                    :
POPOVYCHENKO, Individually,                                       :
                                                                  :
                         Plaintiffs,          :       25-CV-07563 (JAV)
                                                                  :
         -v-                                   :      OPINION AND ORDER
                                                                  :
MELISSA AVILES-RAMOS, in her official                             :
capacity as Chancellor of the New York City                       :
Department of Education, and the NEW YORK                         :
CITY DEPARTMENT OF EDUCATION,                                     :
                                                                  :
                         Defendants.          :
------------------------------------------------------------------X
```

JEANNETTE A. VARGAS, United States District Judge:

Plaintiffs Julissa Crespo, as parent and natural guardian of B.T.; Julissa Crespo, individually; Pavlo Popovychenko, as parent and natural guardian of V.P.; and Pavlo Popovychenko, individually (collectively, "Plaintiffs"), move for a temporary restraining order and preliminary injunction against Melissa Aviles-Ramos, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education ("DOE") (collectively, "Defendants"). ECF No. 25 at 1. Plaintiffs seek an Order directing DOE to immediately issue payments for outstanding tuition, transportation services, and nursing services for B.T. and V.P., two students attending the International Academy for the Brain ("iBRAIN") for the 2025-2026 school year ("SY"). *See id.*;

ECF No. 27 at 1. Plaintiffs' motion for a temporary restraining order and preliminary injunction is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

**A. Individuals with Disabilities Education Act**

The Individuals with Disabilities Education Act ("IDEA") requires states that receive federal special education funding to provide children with disabilities "a free appropriate public education ["FAPE"] in the least restrictive environment suitable for the child." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 150 (2d Cir. 1992)) (cleaned up); *see also* 20 U.S.C. § 1400(d)(1)(A). To ensure the provision of a FAPE, the State of New York is responsible for creating individualized education programs ("IEPs"), which are written statements that "set out, among other things, the [s]tudents' educational needs and the services that must be provided to meet those needs." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 523 (2d Cir. 2020). New York delegates this responsibility to a local Committee on Special Education ("CSE"). *Id.* at 523 n.1. Once a CSE determines that a student is eligible for special education services, the CSE creates an IEP for the student and, working with the school district, provides that IEP to the student's parent(s). *See, e.g.*, ECF No. 8-5 at 18-20.[1]

The IDEA also establishes "formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE." *Fry v.*

---

[1] For citation purposes, the Court refers to the ECF page number generated at the top of a document for unnamed ECF documents (e.g., ECF No. 8-5), but to the PDF numbers at the bottom of the page for named ECF documents (e.g., Complaint).

*Napoleon Cmty. Sch.*, 580 U.S. 154, 154 (2017).  Accordingly, parents of such students are guaranteed "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988). "Parents are specifically entitled to request a due process hearing in order to present complaints as 'to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (quoting 20 U.S.C. § 1415(b)(6)(A)), *abrogation on other grounds recognized by Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 570 (2024).

New York has adopted a two-tier administrative system for review of a parent's due process complaint ("DPC").  *Id.*  First, an impartial hearing officer ("IHO") is appointed by the local board of education or competent state agency to conduct the initial hearing and issue a written decision.  *Id.*  That decision can be appealed to a state review officer ("SRO") of the New York Education Department.  *Id.*  "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in a federal or state court." *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)).

In its so-called "pendency" or "stay-put" provision, Section 1415(j) of the IDEA provides that, "during the pendency of any proceedings," the child is entitled to "remain in [their] then-current educational placement" at public expense.  20

U.S.C. § 1415(j).  The "then-current educational placement" is the one either "provided for in the last educational program to which her parents and the [school district] both agreed" or in a final unappealed administrative decision that "adjudicat[ed] the IEP dispute in the parents' favor." *Moonsammy v. Banks*, No. 24-CV-2616 (PAE), 2024 WL 2831042, at *6 (S.D.N.Y. June 3, 2024) (citations omitted).  Additionally, "when an SRO rules favorably on the merits of parents' challenge to an IEP—where parents have unilaterally placed their child in a private school during the pendency of the dispute—the SRO decision changes the child's pendency placement to the private school." *T.M. by A.M. v. Cornwall Cent. Sch. Dist.*, No. 11-CV-6459 (VB), 2012 WL 13208981, at *2 (S.D.N.Y. Oct. 9, 2012) (citing *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002)); *see also Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004).  Accordingly, the stay-put provision "require[s] a school district to continue funding [the then-current] educational placement . . . until the relevant administrative and judicial proceedings are complete." *Mendez v. Banks*, 65 F.4th 56, 61 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024) (citation omitted).

**B. Factual Allegations**

The student Plaintiffs on whose behalf this case was brought are B.T. and V.P.  ECF No. 1 ("Compl.") at 1.  Both B.T. and V.P. have a disability as defined by 20 U.S.C. § 1401(3).  *Id.*, ¶¶ 67, 74.  B.T. began attending iBRAIN during the 2022-

4

23 SY, ECF No. 8-2 at 24, while V.P. began attending iBRAIN during the 2023-24 SY. ECF No. 8-5 at 19. Both students are currently attending iBRAIN for the 2025-26 SY, which began on July 8, 2025. Compl., ¶ 160; ECF No. 26, ¶ 5. Both students also have contracts for transportation to and from the school with Sisters Travel and Transportation Services, LLC ("Sisters Travel"), but only V.P. has a contract for related nursing services. *See* Compl., ¶¶ 17 n.5, 101, 112.

Both B.T. and V.P. have administrative decisions from previous SYs establishing appropriate placement at iBRAIN along with entitlement to transportation services provided by Sisters Travel. Concerning B.T., B.T.'s parent filed a DPC challenging the appropriateness of the educational placement recommended by the CSE's IEP for the 2022-23 and 2023-24 SYs. ECF No. 8-2 at 23-25. B.T.'s parent also requested a determination that iBRAIN was an appropriate unilateral placement for B.T and payment for transportation services with Sisters Travel. *Id.* at 25. Ultimately, this DPC culminated in SRO decision 24-428, which found that iBRAIN was an appropriate unilateral placement for the 2022-23 and 2023-24 SYs and granted the request regarding payment for transportation services. *See id.* at 37. B.T.'s parent appealed SRO decision 24-428 to federal court, but not with respect to B.T.'s placement. *See generally* Second Amended Complaint, *Crespo et al. v. Aviles-Ramos et al.*, No. 25-CV-3507 (S.D.N.Y. Aug. 18, 2025), ECF No. 21. In that litigation, DOE has contested that iBRAIN (including related transportation services) was an appropriate placement for B.T.

5

for the 2022-23 and 2023-24 SYs.  *See* Answer to Amended Complaint, *Crespo et al. v. Aviles-Ramos et al.*, No. 25-CV-3507 (S.D.N.Y. Sep. 4, 2025), ECF No. 22.

Concerning V.P., V.P.'s parent filed a DPC challenging the appropriateness of the educational placement recommended by the CSE's IEP for the 2023-24 and 2024-25 SYs.  *See* ECF 8-5 at 17-21.  V.P.'s parent also requested a determination that iBRAIN was an appropriate unilateral placement for V.P and funding for related transportation (with Sisters Travel) and nursing services.  *Id.* at 19-20.  Ultimately, this DPC culminated in SRO decision 25-055, which found that iBRAIN was an appropriate unilateral placement for the 2023-24 and 2024-25 SYs and granted the request regarding funding for transportation services.  *See id.* at 42.  That decision, however, denied the request to fund nursing services because it found the services excessive.  *Id.* at 41.  SRO decision 25-055 was not appealed.  ECF No. 35 ("Pl. Br.") at 3.

On July 3, 2025, and June 30, 2025, a DPC was filed on behalf of B.T. and V.P., respectively.  Compl., ¶¶ 100, 111.  Both alleged, *inter alia*, that DOE failed to provide a FAPE, that DOE's IEP failed to recommend an appropriate educational placement, and that iBRAIN was an appropriate placement for the 2025-26 SY.  *Id.*; ECF No. 8-2 at 2, 4-8; ECF No. 8-5 at 2, 5-9.  B.T.'s DPC repeated these allegations with respect to the 2024-25 SY as well.  ECF No. 8-2 at 2-3, 7-8.

Both proceedings are ongoing.  Concerning B.T.'s DPC, the IHO has not issued any orders.  ECF No. 34 ("Def. Br.") at 9; Pl. Br. at 1-2.  In V.P.'s administrative proceedings, the IHO issued a Pendency Order and a Findings of

6

Fact and Decision ("FOFD") on September 15, 2025. Pl. Br. at 4. In the Pendency Order, the IHO found that SRO decision 25-055 constituted V.P.'s "last-agreed upon program for . . . for purposes of pendency" and "pendency lies in th[at] SRO decision." ECF No. 18-1 at 5, 7. Consequently, in accordance with SRO decision 25-055, the IHO held that "[V.P.'s] pendency program consists of [iBRAIN] tuition as well as transportation services actually provided to [V.P.] for travel to and from her home and [iBRAIN] on school days." *Id.* at 7. The IHO, however, also concluded that, since SRO decision 25-055 "did not order any funding for nursing," then "nursing [services] . . . [are] not part of [V.P.'s] educational placement for purposes of pendency." *Id.* V.P.'s parent has appealed the IHO's decision as it regards nursing services and pendency. ECF No. 34-1 at 2. DOE has likewise appealed from the FOFD, but has not challenged the Pendency Order. *Id.* at 1, 3. Accordingly, neither administrative proceeding is complete.

DOE is not currently processing any pendency payments for tuition or transportation costs for B.T. or V.P. for the 2025-26 SY. Def. Br. at 4-5, 9-10.

## C. Procedural History

On September 11, 2025, Plaintiffs filed their Complaint. Compl. at 1. Four days later, Plaintiffs filed their first emergency motion for a temporary restraining order and preliminary injunction requesting the Court to compel DOE to comply with federal and state compliance deadlines based on Plaintiffs' expedited requests or, alternatively, to hold that the failure to hold a Resolution Meeting and conduct a timely due process hearing is a *per se* denial of a FAPE. ECF No. 6 at 1-2. The next

7

day, Plaintiffs filed a second emergency motion for a temporary restraining order and preliminary injunction requesting the Court to order DOE to immediately issue payments for outstanding tuition, transportation services, and nursing services for student Plaintiffs for the 2025-26 SY.  ECF No. 13 at 1; ECF No. 16 at 11.  After a hearing was held concerning those emergency motions on September 19, 2025, the Court denied both motions.  ECF No. 21.  Plaintiffs then filed a Notice of Interlocutory Appeal to the United States Court of Appeals for the Second Circuit with respect to the Court's September 19 order on October 1, 2025.  ECF No. 22 at 1.

On October 9, 2025, Plaintiffs filed their third emergency motion for a temporary restraining order and preliminary junction, ECF No. 25, which is the focus of the present opinion and order.  The Court scheduled a hearing concerning this emergency motion for October 16, 2025.  ECF No. 29.  At that hearing, the Court was informed by counsel for Defendants that no pendency payments were being processed for either student.  The Court inquired as to DOE's position regarding where the students' educational placement was for pendency purposes, if not at iBRAIN.  Counsel for Defendants was unable to identify an alternate placement.

The Court requested supplemental briefs from the parties regarding the status of the underlying administrative hearings, as well as the legal basis for DOE's position that it was not required to process pendency payments for either student.  These supplemental briefs were received on October 20, 2025.

## LEGAL STANDARDS

Injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (citation omitted). Plaintiffs seeking a preliminary injunction must show that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The establishment of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Naively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

Furthermore, different legal standards apply when issuing a preliminary injunction depending upon whether it is prohibitory or mandatory. "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *Id.* at 37 (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)). Moreover, mandatory injunctions also demand a heightened legal

9

standard concerning irreparable harm such that a "party must make a 'strong showing' that [it] will be irreparably harmed." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024) (citation omitted).

Separately, the stay-put provision of the IDEA operates as "an automatic preliminary injunction, given that it substitutes an absolute rule in favor of the status quo—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships." *Mendez*, 65 F.4th at 62. When the stay-put provision applies, "the DOE is obliged to fund their children's educational placements for the duration of the proceedings." *Id.* at 63. "To the extent, however, that a parent's requests go beyond maintenance of her child's then-current educational placement—for instance, in seeking immediate reimbursement of pendency tuition—the traditional preliminary injunction factors come back into play, as the stay-put provision 'does not create an entitlement to immediate payment.'" *Moonsammy*, 2024 WL 2831042, at *5.[2]

---

[2] Defendants contend that, in determining whether Plaintiffs are entitled to an injunction under IDEA's stay-put provision, the Court must first determine whether the students will suffer irreparable harm such that their placement at iBRAIN is at risk. Def. Br. at 10-11. But it is well-established that "irreparable harm need not be shown to obtain injunctive relief regarding pendency." *Cruz v. New York City Dep't of Educ.*, No.18-CV-12140 (PGG), 2019 WL 147500, at *9; *see also Araujo v. New York City Dep't of Educ.*, No. 20-CV-7032 (LGS), 2020 WL 5701828, at *3 (S.D.N.Y. Sept. 24, 2020) (citing cases).

## DISCUSSION

Plaintiffs' motion for a preliminary injunction is granted to the extent that the stay-put provision of the IDEA applies.  Beyond that, Plaintiffs' motion is denied.

### I. Plaintiffs Are Entitled to an Automatic Injunction Under the Stay-Put Provision of the IDEA

Since both B.T.'s and V.P.'s DPC proceedings for the 2025-26 SY are not complete, they are both entitled to stay in their then-current educational program at public expense in accordance with Section 1415(j).  For the purpose of applying that provision, both B.T.'s and V.P.'s then-current educational placement is iBRAIN (including transportation services with Sisters Travel) because SRO decisions 24-428 and 25-055 ruled favorably on the merits of the parents' challenge to their respective IEPs regarding placement and transportation services for the prior SYs.  Accordingly, DOE is obligated to fund the costs of B.T.'s and V.P.'s tuition at iBRAIN and transportation services with Sisters Travel for the period beginning on the date they filed their respective DPCs to the date on which their respective proceedings are complete.

Defendants' arguments to the contrary are baseless.  Because pendency does not guarantee the right to "remain in the exact same school with the exact same service providers while his administrative and judicial procedures are pending . . . [but] only the same general level and type of services that the child was receiving," *De Paulino*, 959 F.3d at 532, DOE claims the right to conduct an "independent analysis of the student's entitlement to pendency and determine[] how best to

11

provide those pendency services." Def. Br. at 5-6. The thrust of DOE's argument is that, until it affirmatively agrees to pendency placement at iBRAIN, it has no obligation to implement pendency services based upon the prior SRO decisions. *Id.* DOE makes this argument even though, three and a half months into the 2025-26 SY, it has not proposed any alternate private placement for either student, let alone an alternate private placement that provides the same general level and type of services as iBRAIN.

DOE's position is unsupported by the statute, caselaw, and the governing regulations. DOE relies heavily upon the Second Circuit's decision in *De Paulino*, Def. Br. at 9-10, but *De Paulino* is easily distinguished from the present case. In *De Paulino*, the Second Circuit held that "the term '*then-current* educational placement' in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." 959 F.3d at 532 (emphasis in original). In the prior SY, the SRO had ruled that the students' private placement at a particular school, iHOPE, was the appropriate placement. *Id.* The City had therefore consented, by operation of law, to that placement. *Id.*

The parents in *De Paulino* then unilaterally transferred the student from iHOPE, the school to which the DOE had agreed, to iBRAIN and sought pendency funding. *Id.* The Second Circuit held that, while the City "retains authority to determine how the students' pendency services are to be provided," the parents did not have the equivalent right to switch from the school that DOE had previously

agreed constituted the appropriate placement to a new school offering equivalent services. *Id.* at 533-35.

Yet the students here have not been unilaterally moved by their parents to a new placement. Rather, they seek pendency at the very same school that DOE previously agreed, through SRO decisions 24-428 and 25-055, constitutes the appropriate placement for B.T. and V.P.

DOE effectively argues that its authority to determine how a student's then-current educational program is to be provided at public expense during the pendency of proceedings means that it can choose to withhold all payments for a student's education. *See* Def. Br. at 5-9. Such a stance is plainly prohibited by the stay-put provision, which obligates DOE to "continue funding" the students' education. *Mendez*, 65 F.4th 56, 61 (2d Cir. 2023). Indeed, "[t]o cut off public funds would amount to a unilateral change in placement, prohibited by the Act." *Zvi D. v. Ambach,* 694 F.2d 904, 906 (2d Cir. 1982).

While DOE can determine how best to provide the pendency educational program, nothing in *De Paulino* suggests that DOE can simply refuse to fund a student at their prior school and simultaneously refuse to offer an alternate equivalent placement. Yet that is precisely what DOE has done in this case. Indeed, DOE's argument ignores the critical language in *De Paulino*. When the City consents in the prior administrative proceeding to the students' private placement at a particular school, "*at that moment,* the City assumed the legal responsibility to pay for [that school's] educational services to the Students as the

13

agreed-upon educational program that must be provided and funded during the pendency of any IEP dispute." *De Paulino*, 959 F.3d at 532 (emphasis added).  DOE is violating this legal obligation by refusing to process any pendency payments for these students.  Given how insubstantial many of DOE's arguments are, the Court is concerned that DOE is not operating in good faith with respect to these students.

### A. Pendency Placement for B.T.

DOE alternatively contends that, because SRO decision 24-428 is pending appeal on the appropriateness of B.T.'s placement at iBRAIN, there is no final unappealed administrative order finding that iBRAIN is an appropriate placement for B.T.  *See* Def. Br. at 10.  DOE points to B.T.'s IEP from 2018 as establishing the then-current educational placement.  *Id.*  The plain language of the federal and state regulations implementing the stay-put provision negates this argument.

The federal regulation implementing the stay-put provision states, "If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents . . . ." 34 C.F.R. § 300.518(d).  The New York regulation implementing the stay-put provision similarly provides, "[i]f a decision of a State review officer . . . agrees with the student's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or school district and the parents for purposes of pendency *during any subsequent appeals* . . . ." N.Y. Comp. Codes R. & Regs. Tit. 8, § 200.5(m)(2) (emphasis added).

Accordingly, the SRO's agreement with the parents that a change of placement is appropriate is treated as an agreement between the school district and the parents for purposes of pendency. The regulations notably do not require such an order to be unappealed to a federal court. To the contrary, Section 200.5(m)(2) recognizes that the SRO's agreement determines then-current educational placement during any such follow-on appeals.

This interpretation is further supported by informal guidance provided by the United States Department of Education's Office of Special Education Programs ("OSEP"), which is the agency in charge of administering the IDEA and which promulgated the federal regulations at issue. According to OSEP:

> Under 34 CFR § 300.518(a), if the parent is requesting a change of placement with which the first-tier hearing officer agrees and the local agency appeals that decision, the original placement (where the child received services at the time the hearing request was made) is the child's placement until the result of the appeal (second-tier hearing). Under 34 CFR § 300.518(d), if the result of the State-level appeal is that the placement should be changed, as requested by the parent, that placement is the child's placement during any subsequent appeal to a court of competent jurisdiction.

*Letter to Hampden*, Office of Special Education Programs, 49 IDELR 197, at 1 (Sept. 4, 2007).

The Court also observes that, in *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, the Second Circuit upheld the grant of a preliminary injunction requiring pendency payments where the SRO decision establishing pendency was on appeal in state court. 297 F.3d 195, 198 (2d Cir. 2002).

Accordingly, the Court concludes that SRO decision 24-428 establishes B.T.'s pendency for the 2025-26 SY.

15

### B. Pendency Placement for V.P.

The DPC filed on behalf of V.P. challenging V.P.'s IEP for 2025-26 SY is not complete. SRO decision 25-055 establishes iBRAIN, along with the related transportation services with Sisters Travel, as V.P.'s then-current educational placement. That decision remains unappealed in its entirety. Additionally, a Pendency Order was issued on September 15, 2025, establishing iBRAIN as V.P.'s pendency placement. DOE has not appealed that Pendency Order. V.P. has appealed from the Pendency Order's denial of nursing services. Pl. Br. at 3.

Notwithstanding that there is no dispute that pendency was established by SRO 25-055, DOE contends that, because V.P. has appealed from the Pendency Order's denial of nursing services, it has no legal obligation to even begin processing pendency funding of tuition and transportation costs. Def. Br. at 6-7. DOE states that it "cannot implement portions of a pendency placement while disputes remain at to the total entitlement to pendency." Def. Br. at 7. DOE offers no legal or practical explanation for why this would be the case.

The appeal of the administrative Pendency Order does not relieve DOE of its pendency obligations, which were created by SRO 25-055. It is well-established that DOE's legal obligations under Section 1415(j) are not dependent upon parties obtaining pendency orders in administrative proceedings. Indeed, students may seek injunctive relief in federal court to enforce their rights under the stay-put provision without first seeking a pendency order at the administrative level at all. *Murphy*, 297 F.3d at 199; *Cruz*, 2019 WL 147500, at *8. The fact that V.P. has

appealed the denial of pendency nursing services to the SRO does not deprive V.P. of the tuition and transportation pendency reimbursements to which she is indisputably entitled. *Cf. Moonsammy*, 2024 WL 2831042, at *6 ("That the Moonsammys have appealed collateral aspects of SRO Bates's decision does not deprive the balance of that decision of immediate force. The two relevant aspects of SRO Bates's decision—that (1) A.M. was denied a FAPE and (2) iBrain is an appropriate placement for A.M.—are not implicated in the Moonsammys' appeal."). Accordingly, DOE is required to fund V.P.'s tuition and transportation during the pendency period, without waiting for the conclusion of V.P.'s administrative appeal regarding nursing costs.[3]

## II.  Plaintiffs' Request for Immediate and Full Payment of Tuition and Transportation Costs is Denied

With respect to Plaintiffs' remaining requests for relief, and in particular their request for an injunction requiring DOE to immediate full payment of tuition and transportation services for the remainder of the 2025-26 SY, ECF No. 27 at 16-17, the Court applies the traditional Rule 65 analysis.

Notably, approximately six weeks ago the Court denied Plaintiffs' second "emergency" motion, which sought this exact same relief. ECF No. 21. In so doing, the Court relied on the Second Circuit's decision in *Mendez*, which held that, as a matter of law, nothing in Section 1415(j) entitled Plaintiffs to immediate payment

---

[3] Plaintiffs also seek nursing costs. ECF No. 27 at 1. But Plaintiffs do not point to any evidence in the record indicating that nursing services had been provided as part of the students' then-current educational placement.

or reimbursement. 65 F.4th at 59. Rather, absent a showing that a delay in payment had placed the student's placement at iBRAIN at risk, DOE "is not obliged to circumvent its ordinary payment procedures." *Id.* at 63; *see also Otero v. Aviles-Ramos*, No. 25-CV-2773 (PAE), 2025 WL 2078950, at *4-5 (S.D.N.Y. July 24, 2025).

Plaintiffs essentially seek to relitigate this Court's prior denial of their TRO/PI. Except now, Plaintiffs have submitted evidence that purports to demonstrate that DOE's withholding of tuition payments has imperiled iBRAIN's operations. ECF No. 26. Plaintiffs argue that such evidence suffices to demonstrate that the students' placement is at risk. ECF No. 27 at 14-16. Plaintiffs do not explain why such evidence was unavailable when they filed their second TRO/PI application in this case.

At the preliminary injunction hearing, Plaintiffs indicated that they were prepared to put on two witnesses to testify as to this issue. Only one witness declaration had been submitted in support of the motion, however. Counsel for Defendants objected to the witness testimony because of the lack of notice. The Court continued the hearing, reserving on the issue of whether it would hear from these witnesses.

The Court is skeptical that evidence regarding iBRAIN's financial straits, standing alone, would be sufficient to satisfy the *Mendez* analysis. As discussed above, Section 1415(j) does not guarantee an education at a particular school. Rather, pendency requires that the student continue to receive the same general level of services as they had prior to the DPC. *T.M. ex rel. A.M. v. Cornwall Cent.*

18

*Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014) ("[T]he pendency provision does not guarantee a disabled child the right to remain in the exact same school with the exact same service providers while his administrative and judicial proceedings are pending. Instead, it guarantees only the same general level and type of services that the disabled child was receiving."). The stay-put provision certainly does not make DOE responsible for a private school's continued financial viability.

Additionally, to the extent Plaintiffs are seeking immediate funding of prospective tuition payments for the entirety of the 2025-26 school year, such claims are not yet ripe for adjudication. As the *Mendez* Court explained, pendency funding obligations expire at the conclusion of the underlying due process proceedings. The "DOE's obligation will be extinguished once the students have final decisions—that is, once the IHO has issued a decision on the merits and that decision is no longer being appealed." 65 F.4th at 61. Under IDEA, courts therefore do not have jurisdiction to order Defendants to prospectively pay tuition that, depending upon the outcome and timing of the underlying administrative proceedings, may never be due and owing. As the Second Circuit stated, "we cannot now ascertain the future, [and] we cannot assume that the DOE's legal obligation will continue through the remainder of the school year." *Id.*

The Court therefore denies Plaintiffs' motion for immediate and full payment of tuition and transportation costs.

## CONCLUSION

Accordingly, Plaintiffs' motion for a preliminary injunction is **GRANTED IN PART AND DENIED IN PART**. The Court declares iBRAIN as B.T. and V.P.'s pendency placement and requires DOE to fund their placement at iBRAIN from the date they filed their DPC until the challenge to their most recent IEP is resolved. Such funding includes both tuition and transportation services with Sisters Travel, and such payments shall be processed in the ordinary course.

The Clerk of Court is directed to terminate ECF No. 25.

SO ORDERED.

Dated: October 29, 2025  
      New York, New York

                                              JEANNETTE A. VARGAS  
                                              United States District Judge