UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                     :

JULISSA CRESPO, as Parent and Natural     :
Guardian of B.T., and JULISSA CRESPO,    :
Individually; PAVLO POPOVYCHENKO, as   :
Parent and Natural Guardian of V.P., and PAVLO :
POPOVYCHENKO, Individually,           :
                                       :

                       Plaintiffs,     :         25-CV-07563 (JAV)
                                       :

      -v-                      :        OPINION AND ORDER
                                       :

MELISSA AVILES-RAMOS, in her official    :
capacity as Chancellor of the New York City  :
Department of Education, and the NEW YORK :
CITY DEPARTMENT OF EDUCATION,    :
                                       :

                       Defendants.    :
                                       :
-----------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

The Individuals with Disabilities Education Act ("IDEA") requires states that receive federal special education funding to provide children with disabilities "a free appropriate public education ["FAPE"] in the least restrictive environment suitable for the child." *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 150 (2d Cir. 1992) (cleaned up); *see also* 20 U.S.C. § 1400(d)(1)(A). Plaintiffs Julissa Crespo, as parent and natural guardian of B.T.; Julissa Crespo, individually; Pavlo Popovychenko, as parent and natural guardian of V.P.; and Pavlo Popovychenko, individually (collectively, "Plaintiffs") and Defendants Melissa Aviles-Ramos, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education ("DOE") (collectively, "Defendants")

have filed cross-motions for summary judgment in this IDEA action.  ECF Nos. 36, 46.  For the reasons set forth below, Plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The IDEA establishes "formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 154 (2017).  Parents are guaranteed "both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311-12 (1988).

New York has adopted a two-tier administrative system for review of a challenge to the adequacy of a child's IEP.  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008).  First, an impartial hearing officer ("IHO") is appointed by the local board of education or competent state agency to conduct the initial hearing and issue a written decision.  *Id.*  Second, that decision can be appealed to a state review officer ("SRO") of the New York Education Department.  *Id.*

In its so-called "pendency" or "stay-put" provision, Section 1415(j) of the IDEA provides that, "during the pendency of any proceedings," the child is entitled to "remain in [their] then-current educational placement" at public expense.  20 U.S.C. § 1415(j).  The "then-current educational placement" is the one either

"provided for in the last educational program to which her parents and the [school district] both agreed" or in a final unappealed administrative decision that "adjudicat[ed] the IEP dispute in the parents' favor." *Moonsammy v. Banks*, No. 24-CV-2616 (PAE), 2024 WL 2831042, at *6 (S.D.N.Y. June 3, 2024) (citations omitted). Accordingly, the stay-put provision "require[s] a school district to continue funding [the then-current] educational placement . . . until the relevant administrative and judicial proceedings are complete." *Mendez v. Banks*, 65 F.4th 56, 61 (2d Cir. 2023) (citation omitted), *cert. denied*, 144 S. Ct. 559 (2024).

This Court assumes familiarity with the underlying facts of this case as set forth in the Opinion and Order granting in part and denying in part Plaintiffs' motion for preliminary injunction. ECF No. 38 (the "PI Opinion"). In that Opinion, the Court declared the International Academy for the Brain ("iBRAIN") as B.T. and V.P.'s pendency placement for the 2025-2026 extended school year. *Id.* at 20. The Court also found that Plaintiffs were entitled to an automatic injunction under 20 U.S.C. § 1415(j) requiring DOE to fund B.T. and V.P.'s placement at iBRAIN from the date they filed their administrative due process complaints ("DPCs") until their challenges to their most recent individualized education programs ("IEPs") are resolved. *Id.* at 20. Such funding is to include both tuition and transportation services with Sisters Travel and Transportation Services, LLC ("Sisters Travel"). *Id.* The Court denied Plaintiffs' request for immediate and full payment of tuition and transportation costs and ordered that such payments be processed in the ordinary course. *Id.* at 17-20.

On summary judgment, the parties rely on largely the same record as they did in connection with the preliminary injunction motion. The only additional evidence submitted in connection with the summary judgment motions is the Declaration of Sapna Kapoor dated November 21, 2025 (the "Kapoor Declaration"), filed by Defendants. ECF No. 47-1. The parties have not submitted Rule 56.1 Statements, and the facts are undisputed.

The Kapoor Declaration attests that on November 21, 2025, DOE processed payment for V.P.'s pendency tuition in the amount of $183,539.76 and transportation costs in the amount of $67,921.00, covering the period from July 7, 2025, to December 31, 2025. *Id.*, ¶ 6. With respect to student B.T., Kapoor states that the relevant agency has been instructed to make payments from the date of B.T.'s DPC through December 31, 2025, once all necessary documentation has been received, namely, a transportation affidavit and invoice from Sister's Travel and the tuition affidavit and updated attendance record from iBRAIN. *Id.*, ¶ 7.

## LEGAL STANDARDS

A grant of summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (citation omitted). The moving party has the burden of demonstrating "that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800*

*Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("[T]he burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact . . . ."). In forming this assessment, the Court must view all "evidence in the light most favorable to the [non-moving party]." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (citation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). "Where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (cleaned up).

The Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Ultimately, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.[1]

## DISCUSSION

Plaintiffs seek much the same relief that they did at the preliminary injunction stage of this case: a declaration that iBRAIN is the appropriate pendency placement and an order requiring DOE to provide full and immediate funding for that pendency placement. ECF No. 36 at 1-2. In opposing Plaintiffs' motion for summary judgment, Defendants argue that the request for a declaration of pendency has been rendered moot by the Court's grant of a preliminary injunction. ECF No. 47 at 7-8. Defendants are mistaken. The grant of a preliminary injunction did not render moot Plaintiffs' claims for permanent relief. *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) ("Preliminary injunctions, however, do not conclusively resolve legal disputes."). Nor have subsequent events rendered Plaintiffs' claims moot. The pendency period has not yet ended. DOE has provided pendency funding with respect to V.P. through December 31, 2025, but Plaintiffs may be entitled to tuition

---

[1] The Second Circuit has held that a different standard applies when the district court reviews an administrative decision in the IDEA context. "A federal court reviewing a dispute over an IEP must base its decision on the preponderance of the evidence," deferring "to the administrative decision because the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (cleaned up). As this case does not involve a challenge to the underlying administrative decisions, the ordinary Rule 56 standard applies. *See Mendez v. Aviles-Ramos*, 25-CV-1096 (CM), 2025 WL 2793755, at *3 (S.D.N.Y. Oct. 1, 2025).

and transportation costs beyond that date.  And with respect to B.T., DOE has yet to make any pendency payments at all.

The Court therefore holds that, for the same reasons that Plaintiffs were entitled to a preliminary injunction, Plaintiffs are also entitled to a final judgment in this case declaring their pendency placement to be iBRAIN and requiring DOE to fund V.P. and B.T.'s tuition and transportation costs from the date they filed their administrative DPCs until the challenges to their most recent IEPs are resolved.  PI Opinion at 11-19.

The only new issue that has been raised in the summary judgment motions is whether DOE should be required to "fund all outstanding late fees and interest related to tuition, nursing, and transportation."  ECF No. 37 at 1.[2]  Specifically, Plaintiffs argue that the SRO decisions that establish pendency "require DOE to directly fund B.T.'s and V.P.'s placements pursuant to Plaintiffs' respective contracts with the providers."  ECF No. 37 at 12.

With respect to B.T., the underlying SRO decision contains no such language. The SRO decision which establishes pendency for B.T. states only that "iBrain was an appropriate unilateral placement for the student and that equitable considerations favor the parent's request for district funding of the costs of the

---

[2] As the Court found in its PI Opinion, although Plaintiffs seek reimbursement for nursing services, they have not submitted any evidence that nursing services had been provided as part of the students' then-current educational placement.  PI Opinion at 17 n.3.

student's attendance." ECF No. 8-2 at D016. Nothing in that decision suggests that DOE was required to pay late fees or interest payments.

In V.P.'s case, the SRO decision for the 2024-2025 extended school year ordered DOE to "fund the iBrain tuition and related services per the iBrain annual enrollment contract" and "fund the transportation costs per the school transportation annual service agreement with Sisters Travel." ECF No. 8-5 at C-26. At issue, then, is whether this language encompasses contractual late fees and interest.

The Court previously addressed whether an iBRAIN student could recover tuition late fees as part of a pendency order in *Chaperon v. Banks*, No. 24-CV-05135 (JAV), 2025 WL 2207908, at *8-9 (S.D.N.Y. Aug. 4, 2025). In *Chaperon*, this Court found that the pendency orders at issue did not require payment of late fees, as late fees are not an element of tuition under the terms of the iBRAIN enrollment agreement. *Id. Chaperon* is indistinguishable from the instant case.

As in *Chaperon*, the administrative orders at issue here did not explicitly require payment of late fees but rather spoke only of "tuition . . . and . . . transportation," ECF No. 8-2 at D016, or "tuition and related services," ECF No. 8-5 at C-26. But the iBRAIN enrollment agreement does not categorize late fee penalties or interest as part of "tuition" or "transportation." The iBRAIN enrollment agreement sets forth two categories of tuition: "base tuition," which includes the costs of academic programming, an individual paraprofessional, and the school nurse, *e.g.*, ECF No. 8-2 at F001, ¶ 5; and "supplemental tuition," which

includes "the cost of the Student's related services programming such as physical therapy, occupational therapy, speech-language therapy, vision education services, assistive technology services, music therapy, hearing education services and parent counseling and training," *e.g.*, *id.*, ¶ 6. The contract separately provides for assessment of a late payment penalty:

> The Payor shall remit each amount owed under this Enrollment Contract ('Outstanding Amount') within thirty (30) calendar days after its stated due date; if full payment is not received within that 30-day period, a further grace period of seven (7) calendar days shall be allowed without penalty. If any portion of the Outstanding Amount remains unpaid after the expiration of this combined thirty-seven-day (37-day) period, a late tuition payment fee equal to ten percent (10%) of the Outstanding Amount (the 'Tuition Late Fee') shall be immediately added to the balance. Thereafter, for every additional thirty (30)-day period, or fraction thereof, that any part of the Outstanding Amount, including all previously assessed Tuition Late Fees remains unpaid, interest shall accrue on the unpaid balance at the lesser of two percent (2 %) per calendar month or the maximum rate permitted by applicable law, compounding monthly until all amounts due are paid in full.

*E.g.*, *id.* at G003, ¶ 8(c). The SRO's reference to "tuition" does not naturally encompass the separate category of late penalty fees and interest.[3] *Cf. Mendez*, 2025 WL 2793755, at *6 (requiring payment of late fees where administrative order

---

[3] The contract with Sisters Travel is structured in a similar fashion. Payment for services is governed by section 6 of the agreement, which requires three installment payments be made on specific dates. *E.g.*, ECF No. 8-5 at E-2. A separate contractual provision imposes a late payment penalty of ten percent of the outstanding amount due, as well as interest. *E.g.*, *id.* at E-3.

9

explicitly stated that DOE must fund transportation costs "for the contracted amount").

Finally, as the Court held in *Chaperon*, requiring Defendants to pay late fees in accordance with a private contract runs contrary to the principle that, under the IDEA, DOE is only required to pay pendency tuition retroactively, not prospectively. Under the terms of the private enrollment agreements with iBRAIN, payment for the school year ending in June 2026 was due in three installments, with the final installment due on January 6, 2026. *E.g.*, ECF No. 8-5 at D-2. The argument that DOE is obligated to make all prospective tuition payments by January 2026 or incur substantial late fees based on a contract to which it is not a party and had no part in negotiating directly contradicts the Second Circuit's decision in *Mendez*.

Similar to the instant case, in *Mendez*, five parents and guardians filed suit on behalf of their children under section 1415(j) of the IDEA, seeking to enforce the students' pendency placements at iBRAIN. *Mendez*, 65 F.4th at 59-60. DOE had made full tuition payments up until the time of motion practice, as it has here for student V.P. *See id.* at 60-61. The *Mendez* plaintiffs nonetheless sought an order requiring DOE to make payments for tuition for the remainder of the school year. *Id.* at 61. The Second Circuit held that such claims were not ripe for adjudication, and that the district court therefore lacked subject matter jurisdiction to grant such relief. *Id.*

The Second Circuit explained that pendency funding obligations expire at the conclusion of the underlying due process proceedings. The "DOE's obligation will be

extinguished once the students have final decisions—that is, once the IHO has issued a decision on the merits and that decision is no longer being appealed." *Id.* (citations omitted).  Under the IDEA, courts therefore do not have jurisdiction to order Defendants to prospectively pay tuition that, depending upon the outcome and timing of the underlying administrative proceedings, may never be due and owing.  As the Second Circuit stated, "we cannot now ascertain the future, [and] we cannot assume that the DOE's legal obligation will continue through the remainder of the school year." *Id.*  If a district court cannot order DOE to make prospective pendency payments, then a private contract between parents and a private school, to which DOE is not a party, cannot alter DOE's legal obligations under the IDEA and require prospective payments or risk substantial financial penalties.

### CONCLUSION

Accordingly, Plaintiffs' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** and Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

The Court declares iBRAIN as B.T. and V.P.'s pendency placement and requires DOE to fund their placement at iBRAIN from the date they filed the DPC regarding their respective IEPs for the 2025-2026 extended school year until each student's complaint is resolved.  Such funding shall include both tuition and transportation services with Sisters Travel, and such payments shall be processed in the ordinary course.

The Clerk of Court is directed to enter judgment in accordance with this

Opinion and Order, to mark all outstanding motions as terminated, and to close the

case.

SO ORDERED.

Dated:  December 18, 2025
        New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge